Robert M. BENSMAN, Plaintiff,

v.

CITICORP TRUST, N.A., Citibank, N.A., Defendants.

No. 04–81009–CIV–HURLEY.

United States District Court, S.D. Florida.

Jan. 18, 2005.

Anne Marie Hawkins, Esq., Sara C. Devine, Esq., Hawkins and Co., L.P.A,

Clerveland, OH, J. Michael Burman, Esq., Heather McNamara–Ruda, Esq., Burman Critton, Luttier & Coleman, West Palm Beach, FL, for Plaintiff.

Edward M. Mullins, Daniella Friedman, Astigarraga Davis Mullins & Grossman, P.A., Miami, FL, for Defendants.

## ORDER DENYING PLAINTIFF'S MOTION TO REMAND TO STATE COURT

HURLEY, District Judge.

**THIS CAUSE** comes before the court upon plaintiff's motion to remand the above styled action to the Circuit Court for the Fifteenth Judicial Court of Florida. For the reasons stated below, plaintiff's motion to remand is denied.

### BACKGROUND

Plaintiff Robert Bensman hired Cashel Management Company, Inc. ("Cashel") as a money and investment manager in 1993. As a result of Mr. Bensman's relationship with Cashel, Mr. Bensman opened a custodial account with Citibank that authorized Cashel to buy and sell securities with the proceeds in the account. Mr. Bensman alleges that, as part of a massive scheme to defraud, Cashel directed unauthorized funds transfers from his account and unlawfully converted over $4 million from Mr. Bensman's Citibank account. Mr. Bensman has filed this action against Citibank claiming that Citibank and/or its employees were active participants in the fraudulent scheme.

On October 12, 2004, Mr. Bensman filed a third amended complaint in state court containing the following state law causes of action against Citibank: 1) breach of contract; 2) unjust enrichment; 3) vicarious liability / conversion; 4) aiding and abetting conversion; 5) breach of fiduciary duty; 6) aiding and abetting breach of fiduciary duty; 7) negligent supervision; 8) constructive fraud; 9) fraud; and 10) violation of Fla. Stat. § 670.204. On November 2, 2004, defendants filed a notice of removal with this court, contending that removal of Mr. Bensman's state court action was proper because Mr. Bensman's state law claim under Fla. Stat. § 670.204 is completely preempted by federal law (i.e. 12 C.F.R. §§ 210.25–210.32).

Mr. Bensman has now filed a motion to remand this case to state court, contending that his claim under Fla. Stat. § 670.204 is not completely preempted by federal law. Alternatively, Mr. Bensman argues that even if his claim under Fla. Stat. § 670.204 is completely preempted by federal law, the court should remand his remaining state law claims to the state court. Mr. Bensman neither disputes that defendants' notice of removal was timely, nor that the removal procedure itself was proper.

### DISCUSSION

#### A. Legal Standard on Motions to Remand

The Eleventh Circuit has held that "[w]hether a claim 'arises under' federal law 'is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Dunlap v. G & L Holding Group, Inc.,* 381 F.3d 1285, 1290 (11th Cir.2004) (citing *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)). "Thus, 'the plaintiff [is] the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law,'

even where a federal claim is also available." *Id.* Nonetheless, the Eleventh Circuit has clearly held that "even when a plaintiff has pled only state-law causes of action, he may not avoid federal jurisdiction if either (1) his state-law claims raise substantial questions of federal law or (2) federal law completely preempts his state-law claims." *Id.* (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 13, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)).

Furthermore, the Eleventh Circuit has recognized that "[c]omplete preemption occurs when federal law so occupies a given field that a state-law claim is transformed into a claim 'arising under' federal law." *Id.* (citing *Geddes v. Am. Airlines, Inc.,* 321 F.3d 1349, 1353 (11th Cir.2003)). "In other words, 'if a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law.'" *Id.* (quoting *Franchise Tax Bd.,* 463 U.S. at 24, 103 S.Ct. 2841).

**B. Preemption of Mr. Bensman's Fla. Stat. § 670,204 Claim By Federal Law**

■ Mr. Bensman asserts that his case should be remanded to the state court because his claim under Fla. Stat. § 670.204 is not completely preempted by federal law. Fla Stat. § 670.204 specifically provides, in relevant part:

[i]f a receiving bank accepts a payment order issued in the name of its customer as sender which is not authorized and not effective as the order of the customer under section 670.202 or is not enforceable, in whole or in part, against the customer under 670.203 the bank shall refund any payment of the payment order received from the customer to the extent the bank is not entitled to enforce payment and shall pay interest on the refundable amount calculated from the date the bank received payment to the date of the refund. . . .

In this case, Mr. Bensman alleges that the defendants are strictly liable under section 670.204 to return $4.5 million of funds that were wired without authorization during the period encompassing January through March of 2000.

Defendants contend that removal jurisdiction is proper in this case because Mr. Bensman's wire transfer claim is completely preempted by Subpart B of Federal Reserve Regulation J (12 C.F.R. §§ 210.25–210.32). These regulations govern wire transfers made via the Federal Reserve Wire Transfer Network ("Fedwire"). *See Grossman v. Nationsbank, N.A.,* 225 F.3d 1228, 1229 (11th Cir.2000) (explaining Fedwire system). In *Grossman,* though the Eleventh Circuit did not specifically address the issue of complete preemption, the court recognized that in cases alleging "erroneous execution of a Fedwire funds transfer . . . the provisions of Regulation J exclusively apply to the fund transfer." *Grossman,* 225 F.3d at 1232.

In *Eisenberg v. Wachovia Bank, N.A.,* 301 F.3d 220 (4th Cir.2002), the Fourth Circuit specifically considered whether Regulation J completely preempts any state law claims arising from erroneous execution of a Fedwire funds transfer. The Fourth Circuit examined its holding in *Donmar Enterprises, Inc. v. Southern National Bank of North Carolina,* 64 F.3d 944 (4th Cir.1995), and stated that "[b]y its own terms, Regulation J 'supersedes or pre-empts inconsistent provisions of state law.'" *Eisenberg,* 301 F.3d at 223 (citing

Comm. on Sec. 210.25, 12 C.F.R. Part 210, Subpt. B, App. A. (2002)). The *Eisenberg* court then added that "[r]egulation J preempts any state law cause of action premised on conduct falling within the scope of Subpart B, whether the state law conflicts with or is duplicative of Subpart B." *Id.* (citing *Donmar* 64 F.3d at 949–50). Finally, the court added that "[d]etermining if a state law claim is preempted by Regulation J turns on whether the challenged conduct in the state claim would be covered under Subpart B as well." *Id.*

In *Eisenberg,* the court held that:

Wachovia properly processed Eisenberg's funds transfer order under the standards of Subpart B. Wachovia is not liable under Subpart B for the manner in which it received and credited Eisenberg's Fedwire funds transfer. Any state law claim that is premised on this same conduct would be either duplicative of or contradictory to Regulation J and is thus preempted.

*Id.* The *Eisenberg* court added that the only claims that are not preempted by Regulation J are claims where the Fedwire transfer "is only incidental" to the claims in the complaint. *Id.* In Mr. Bensman's case, however, his complaint for damages under Fla. Stat. § 670.204 specifically alleges that defendants are liable because they "wire transferred [funds] from Plaintiff Bensman's custodial account to Rx Remedy without authorization." Pl's. Compl. at ¶¶ 129–31.

In this case, Mr. Bensman is specifically alleging that Citibank is liable "for the manner in which it [handled Mr. Bensman's] Fedwire funds transfer." Thus, under the logic outlined in *Eisenberg* and *Donmar,* the court finds that Mr. Bensman's state law claim under Fla. Stat.

§ 670.204 is either duplicative of or contradictory to Regulation J and is thus preempted. Accordingly, the court finds that removal jurisdiction is proper in this case because Mr. Bensman's claim under Fla. Stat. § 670.204 is completely preempted by Regulation J.

## C. Supplemental Jurisdiction

■ Mr. Bensman alternatively argues that, regardless of this court's decision on Count X, his remaining claims should be remanded to state court. In *In re City of Mobile,* 75 F.3d 605, 607 (11th Cir.1996) the Eleventh Circuit recognized that:

district courts may decline to exercise *supplemental jurisdiction* over a claim under subsection (a) if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

(citing 28 U.S.C.A. § 1367(c)). In this case, however, the court finds that the plaintiff's claims do not raise novel or complex issues of state law, and that plaintiff's state law claims do not predominate over the Fedwire claim to the extent that a denial of supplemental jurisdiction would be appropriate. All of the plaintiff's claims in this case arise from a determination regarding whether Mr. Bensman authorized the Fedwire transfers in this case. Therefore, declining to exercise supplemental jurisdiction in this case would lead to an unnecessary duplication of judicial resources. Thus, the court finds that supplemental jurisdiction over the plaintiff's state law claims is appropriate in this case

1334

pursuant to the standards enumerated in 28 U.S.C. § 1367(c).

## CONCLUSION

Accordingly, for the reasons stated herein, it is hereby **ORDERED** and **ADJUDGED** that plaintiff's motion to remand [DE # 10–1] is **DENIED**.